### BLASSINGAME v. BOARD OF COM'RS OF HAYWOOD COUNTY, N. C., et al.

(Circuit Court, W. D. North Carolina, Asheville Division. January 29, 1909.)

EQUITY (§ 405*)—PERFORMANCE—CONTRACT FOR BUILDING ROADS—DETERMINATION OF QUANTITY OF WORK DONE.

A master in determining a disputed issue as to the number of yards of earth moved by a road contractor held not justified in ignoring the measurement made by engineers, which was the method provided by the contract, and finding the quantity by assuming that each team employed on the work moved a certain number of yards per month, especially where it appeared from the evidence that the estimate of the engineers was the more reliable.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 405.*]

In Equity. On exceptions to master's report.

Merrimon & Merrimon, for plaintiff.
S. E. Welsh and Norwood & Norwood, for defendants.

NEWMAN, District Judge. This case was referred back to the special master for two purposes—one to have a remeasurement made of the work in controversy, and the other to ascertain more definitely the amount upon which the 10 per centum provided by the contract was reserved by the road commissioners. After some difficulty two civil engineers, W. A. Park and P. M. Feltham, both apparently quite competent for the work, and found to be so by the master, were selected and entered upon the work of remeasurement. They finished the work, and made a report, in which they agreed that, while they had considerable difficulty in making this remeasurement, it was at least approximately correct. Mr. P. M. Feltham, one of the civil engineers, says that 90 per cent. of it is reasonably correct, and the other 10 per cent. was as nearly so as they could make it. In his second report the special master rejects this remeasurement entirely, and goes back to his original method of reaching the amount due Blassingame; that is, by assuming that a team attached to a scraper would remove 40 cubic yards of earth per day, and allowing 25 working days to a month. Adhering to this method, he finds that Blassingame was underestimated for work done of the Pigeon road $1,015.08, for work done of the Clyde road, $1,409.10, and for work done on the Jonathan Creek road, $1,474.33, making a total of $3,898.51. I was not satisfied on the former hearing, and before the remeasurement was made, with this method of finding out whether or not Blassingame was underestimated, and the extent of the same, if there was such underestimate. A more careful examination of the matter and further reflection has convinced me that this method of reaching the truth of the case is wholly unreliable. In the testimony given by Mr. Park, one of the civil en-

gineers employed by the special master to make this remeasurement, he states that he allows for the amount of earth to be removed by a team and scraper 600 cubic yards per month.   He stated, further, that his estimate is that there will be an average of 22 working days to a month, and that is what he counts on in making contracts.   Allowing this number of working days to the month (22) and the amount of cubic yards per month stated by Mr. Park, a team would only remove $27^3/_{11}$ cubic yards per day.   If these figures be taken as a basis for calculation (while I have not gone through it carefully), I suppose it would show that Mr. R. S. Payne's estimates were more favorable to Blassingame than he was entitled to.   That is, allowing that a team could move in round numbers $27\frac{1}{2}$ cubic yards of earth in a day for 22 working days per month, it would appear to make a less amount than the original estimate.   Even if there was allowed as much as 30 cubic yards per day, with 23 working days to the month, it would not amount to Payne's original estimate.   While every presumption should be given in favor of the correctness of the master's report, yet, where the method provided for in the contract for ascertaining the amount of earth removed is departed from, and a new and original method is adopted, such as that used by the master in this case, I do not feel that it is necessary to follow it unless it is shown with reasonable clearness to be a proper plan for reaching a correct result; and certainly not unless the plan provided in the contract for estimates by an engineer proves to be wholly unsatisfactory and unreliable.

Here we have the opinion of a civil engineer of ability and 25 years' experience, and who has done a large amount of work such as that now under investigation, who says that he allows 22 working days to a month, and $27\frac{1}{2}$ cubic yards in round numbers of earth removed by a team per day, which shows, assuming him to be fair and unbiased, which I think he is, how unsafe it would be to adopt the figures used by the special master in his calculation as to what Blassingame's estimate should have been.   In view of the fact that we have now something upon which we can properly act and base a calculation as to the state of the account between Blassingame and the road commissioners, and inasmuch as this is in line with what was contemplated by the contract, it seems to me it would be clearly wrong to adhere to the master's method of reaching a result.

Upon the remeasurement, these engineers agree in finding a difference in favor of Blassingame, as I find it, of $843.32½.   They make certain deductions for drain openings and rock upon all the roads and for yardage from Main street to Richland Creek bridge on the Jonathan Creek road.   They do not make any deduction for what counsel for the road commissioners call "foundation excavation."   I do not clearly understand this latter claim.   The contention is that it should reduce the amount of difference in value between the present measurement and the old measurement to $648.10.   In view of the fact that the master finds that Blassingame was underestimated in a much larger amount than this, I shall yield something to that, and allow the whole amount of the difference between the report of the engineers making this remeasurement and the amount allowed Blas-

.singame by the original estimate of $843.32. It is reasonably clear that this work was done in 1904, so interest should be allowed on this amount from January 1, 1905, which I calculate to be $206.47, making a total of principal and interest of $1,049.80. I shall add to this $1,-889.26, the amount of the 10 per cent. reserved by the road commissioners as ascertained and found by the master. While there is some doubt under the evidence as to the correctness of this, and whether there should not be a deduction on account of the work done under Ferguson's supervision in 1906, still I do not think it is so clear that the master erred in this as to justify the court in interfering with this finding. This $1,889.26 should bear interest, in my opinion, from March 13, 1907. This interest would be $212.53, which would make a total amount of principal and interest to this date of $2,101.79. That is:

| | | |
|---|---|---|
| 10 per cent. reserved............................................ | $1,889.26 | |
| Interest at 6 per cent. to January 29, 1909.............. | 212.53 | $2,101.79 |
| Underestimate according to remeasurement............. | 843.325 | |
| Interest at 6 per cent. from January 1, 1905, to date..... | 206.478 | 1,049.80 |

    Making a total of............................................$3,151.59

Costs in this case should be apportioned as heretofore ordered; that is, each party should pay half of the costs incurred including the amount allowed the master, stenographer's fee, witness fees, and all court costs. Of course, the amount paid the engineers to make this remeasurement must be paid by the road commissioners as they agreed in open court. The special master will be allowed an additional sum of $200 for his services in connection with the rehearing. The result of what has been stated is that the exceptions to the report of the special master must be sustained, except as to his finding as to the amount of the 10 per cent. reserved ($1,889.26.) in the hands of the road commissioners. This exception will be overruled.

A decree will be entered in accordance with what has been stated above.

Decree will be entered in favor of the complainant for:

| | | |
|---|---|---|
| 10 per cent. reserved................................... | $1,889.26 | |
| Interest at 6 per cent. to January 29, 1909.............. | 212.53 | $2,101.79 |
| Underestimate according to remeasurement............. | 843.325 | |
| Interest at 6 per cent. from January 1, 1905, to date..... | 206.478 | 1,049.80 |

    Making a total of............................................$3,151.59